TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00425-CR







Craig Williams, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT

NO. 9014060, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING




 Appellant Craig Williams appeals from his conviction of the offense of theft of
property of the value of $100,000 or more but less than $200,000. See Tex. Pen. Code Ann.
§ 31.03(a), (b)(1), (e)(6) (West Supp. 2002). The trial court assessed appellant's punishment,
enhanced by prior felony convictions, at imprisonment for fifteen years. On appeal, appellant
complains of the admission of hearsay evidence. We will affirm the judgment.


Facts


 It was alleged that appellant,


 on or about the 25th day of May A.D. 2000, . . . did then and there unlawfully
appropriate, by acquiring and otherwise exercising control over, property, namely,
jewelry and diamonds, of the value of $100,000 or more but less than $200,000, from
James Doscher, the owner thereof, without the effective consent of the owner and
with intent to deprive the owner of the property.



 At approximately 11:00 a.m., May 25, 2000, in the Highland Mall in Austin, in the
Gurinsky Jewelry Store, two thieves stole loose diamonds and other property. James Doscher, the
store manager, and Sally Conlin, a store employee, were waiting on customers at one end of the
store. Doscher's attention was drawn to the other end of the store. He saw a person stand up behind
the counter which held loose diamonds. Doscher asked the man what he was doing and the man said
that he had dropped a quarter. Doscher told the man to get out from behind the counter. A second
man stood up behind the counter. This man was carrying a blue and white Foley's shopping bag. 
When Doscher asked the second man what he had in the bag, the man replied, "None of your
business." Both men then walked rapidly out of the store into the mall and then started to run. 
Doscher got the attention of security officer Mike Calvery. Together the two men ran after the
thieves. At a mall entrance, Doscher and Calvery met a young man who told them that he had seen
two black males, one of whom was carrying a Foley's shopping bag, get into a white car. The
witness was able to get the license plate number of the white car and he gave it to Doscher and
Calvery. Doscher later gave the license plate number to police.

 Doscher testified that the door to one of the jewelry cases had been lifted off its track
and shoved in so that the robbers were able to reach in and take the merchandise. The door to
another display case was unlocked and items were also removed from that case. Doscher testified
that twenty-six loose diamonds and some platinum mountings were taken from the cases. The total
retail value of the diamonds taken was $140,995. Doscher testified that he had a greater right to
possession of the diamonds and mountings than appellant. He also testified that he did not give
anyone consent to take the items.

 Doscher testified that he was shown two photo lineups. In the first lineup, he picked
out person number four as the person carrying the shopping bag. In the second lineup, he identified
person number five as the first person he saw stand up behind the counter. Testimony by Detective
Gina Mach established that person number four in State's Exhibit 9 was appellant and person
number five in State's Exhibit 10 was Sammy Shelly.

 Ray Anderson, the general manager of Gurinsky's Jewelry, testified that the day
before the theft, he had been working a shift at the store. During his shift several people came into
the store to look at watches. At one point during their conversation, one person pulled out a roll of
money and laid two or three $100 bills on the counter as if to demonstrate that he had the ability to
purchase something. Anderson testified that he felt this was unusual behavior. When police later
showed him the two photo lineups several days after the theft, he identified appellant, person number
four in State's Exhibit 9, as the person who had been in the store the day before the theft and had
displayed the $100 bills.

 Police traced the license plate number of the car and found that the car was owned
by Alamo Car Rental. The contract for the car rental showed that appellant and his friend, Sammy
Shelly, rented the car.

 David Hicks, a convicted felon and a former inmate of the Travis County jail, testified
that while he was jailed at the Travis County Correctional Center in Del Valle, he was in the cell
next to appellant. He had conversations with appellant in which appellant voiced concern about an
ATM machine at the mall. Appellant wondered if the ATM machine had a camera which could
place him at the mall on the day of the robbery and at about the same time as the robbery. Hicks also
testified that appellant told him that a friend of his had the diamonds that were stolen from the store
and appellant was upset because this friend would not help him out with either bail or hiring an
attorney. Appellant also told Hicks that the locks on the cases were pretty cheap and it was easy to
get into them. Finally, appellant told Hicks that his family was going to testify that on the day of the
robbery he was at his child's graduation.

 The defense presented several alibi witnesses who testified that on the morning of
May 25, 2000, appellant was attending his daughter's pre-K graduation ceremony in Houston.

 In his points of error, appellant asserts that the trial court erred in overruling his
hearsay objections to the testimony of store manager James Doscher and security guard Mike
Calvery that an unnamed person gave them the license plate number of the vehicle in which the
suspects fled.

 Doscher testified:



 The security guard and myself then went running after the two suspects. We
went up the escalator out the one entrance. There was another security guard
outside. We were told that nobody had gone out that way. We backtracked and
went out the opposite entrance where we were met by a young gentlemen who
asked us if we were chasing two black males carrying --



 [Defense Counsel]: Objection. Judge, this is hearsay.



 After a colloquy between the court and counsel, the trial court admitted the hearsay
testimony as a present sense impression exception to the hearsay rule.



 With regards to that individual, did he relay some information to you with regards
to his observations?




 Yes, ma'am.




 Okay. And with regards to his observations, what did he tell you that he had
observed?




 Two black males getting into a white car, the one black male carrying a blue and
white Foley's shopping bag.




 And did he have the opportunity or did he relay to you any opportunity to observe
the license plate of that car?




 Yes, he had written down the license plate number. He told the mall security
officer and myself that he didn't want to give it to us in that particular spot and
we walked around to where it was a little more of a discreet location because the
gentleman said he did not want to get involved.




 Okay. And this blue and white Foley's bag, what kind of Foley's bag did you
notice this second individual in the store to be carrying?




 A paper blue and white Foley's shopping bag.




 Did that seem to match the two individuals that you had observed?




 Yes, ma'am.




 Did you or the security guard get the license plate number from that individual?




 The security guard wrote it down and at a later time he handed me the piece of
paper that I ended up giving to the first officer that was on the scene.




 Calvery testified:




 What did you do next?




 Mr. Doscher and myself went out of their store, proceeded on to the east Foley's
wing of Foley's and went up the escalator and began searching for the two
suspects.




 Were you able to find either of the two suspects?




 No, sir.



 Did you encounter anyone who may have given you some additional
information?




 A gentleman walked in from the south entrance of the main mall . . . and asked
us if we were looking for two black males carrying a Foley's bag.




 And did that gentleman relay some information to you about some observations
that he had just made?



 [Defense Counsel]: Judge, at this time I'm going to renew my earlier objections
as to hearsay.


 THE COURT: Overruled.



 I'll ask the question again. Did that gentleman that approached you relay any
information to you about some observations that he had made?




 He stated, he gave us a brief description of the individuals and stated to me that
it seemed like they were in a hurry and he just happened to get the license plate
number of the vehicle they took off in.




 Did he give the license plate number to you?




 Yes, he did.




 You said he gave you a brief description. Do you recall what that description
was?




 Basically it was two black males carrying a Foley's bag.



 Q: Two black males and one of them was carrying a Foley's bag?



 Correct.




 Did you ask this gentleman for his name and identifying information?




 I tried to get his information as much as possible and he refused.




 He refused. Did he give you a reason for not giving it to you?



 A: He advised me that he didn't want to really get involved and he was leery about
people seen with me giving out information.



 Did he seem scared to give that information to you?

 
 He was a little bit nervous.

 



 What did you do after he gave you this information? And particularly, what did
you do with the license plate number?




 I gave it to Mr. Doscher and advised him to go ahead and give it to the police
department.




 Both witnesses, over objection, gave hearsay testimony. The issue presented is
whether the testimony of the two witnesses qualified as a present sense impression exception to the
hearsay rule.


 Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial


 The following are not excluded by the hearsay rule, even though the declarant is
available as a witness:


 (1) Present sense impression. A statement describing or explaining an event or
condition made while the declarant was perceiving the event or condition, or
immediately thereafter.



Tex. R. Evid. 803(1). More specifically, the issue here is whether the declarant immediately after
perceiving an event described that event to the witnesses. If the declarant's description of the event
was made to the witnesses immediately after he perceived the event, the testimony of the witnesses
was admissible as an exception to the hearsay rule.

 An appellate court reviews a trial court's decision to admit or exclude evidence under
an abuse of discretion standard. See Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App.
2000); Green v. State, 934 S.W.2d 92, 101-102 (Tex. Crim. App. 1996); Lawton v. State, 913
S.W.2d 542, 553 (Tex. Crim. App. 1995). A reviewing court should not reverse a trial court's ruling
that is within the zone of reasonable disagreement. Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1990); see also Weatherred, 15 S.W.3d at 542; Green, 934 S.W.2d at 101-102.

 In his argument, appellant insists there are three reasons why the testimony about
which he complains does not qualify as a present sense impression exception to the hearsay rule. 
First, appellant argues that there is no evidence that the declarant described the event he had
witnessed immediately after he observed the event.

 The present sense impression exception to the hearsay rule is based upon the
underlying premise that the contemporaneity of the event and the declaration ensures reliability of
the statement. Brooks v. State, 990 S.W.2d 278, 287 (Tex. Crim. App. 1999). The closer the
declaration is to the event the less likely there will be a calculated misstatement. Id.


 The rationale for the exception stems from the statement's contemporaneity, not its
spontaneity, as one commentator has noted:



 If a person observes some situation or happening which is not at all
startling or shocking in its nature, nor actually producing excitement
in the observer, the observer may yet have occasion to comment on
what he sees (or learns from other senses) at the very time that he is
receiving the impression. Such a comment, as to a situation then
before the declarant, does not have the safeguard of impulse, emotion,
or excitement, but there are other safeguards. In the first place, the
report at the moment of the thing then seen, heard, etc., is safe from
any error from defect of memory of the declarant. Secondly, there is
little or no time for calculated misstatement, and thirdly, the statement
will usually be made to another (the witness who reports it) who
would have equal opportunities to observe and hence to check a
misstatement. Consequently, it is believed that such comments,
strictly limited to reports of present sense-impressions, have such
exceptional reliability as to warrant their inclusion within the hearsay
exception for Spontaneous Declarations.


 Ray, 1A Texas Practice, Law of Evidence § 916, at 158-59 (3d ed. 1980) (emphasis
in original). 



Rabbani v. State, 847 S.W.2d 555, 560 (Tex. Crim. App. 1992).

 In Harris v. State, 736 S.W.2d 166 (Tex. App.--Houston [14th Dist.] 1987, no pet.),
the passage of thirty minutes between the time the declarant perceived the event and made a
statement describing that event was not too long to qualify the declarant's statement as a present
sense impression exception to the hearsay rule. Id. at 167.

 When a declarant made his statement within four to six minutes after the event, the
trial court could reasonably have concluded that there was little opportunity for the declarant to make
a calculated misstatement of the event he witnessed; the statement was admissible as a present sense
impression. Kubin v. State, 868 S.W.2d 394, 396 (Tex. App.--Houston [1st Dist.] 1987, no pet.).

 Appellant cites Beauchamp v. State, 870 S.W.2d 649 (Tex. App.--El Paso 1994, pet.
ref'd), where the court stated: "We do not believe that a statement of opinion about a condition or
event, as opposed to a statement of description or explanation about something observed or
otherwise sensed, qualifies as a present sense impression." Id. at 652. Appellant also cites Cardenas
v. State, 787 S.W.2d 160, 162 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd). In Cardenas, a
statement did not qualify under the present sense impression exception to the hearsay rule when the
declarant's statement was made on the same day as the shooting in response to police interrogation
through an interpreter. Beauchamp and Cardenas are distinguishable on their facts from the case
at hand.

 Here, the record does not show the precise time in minutes between the declarant's
seeing the two men with a shopping bag escaping in a white car with a license plate number he
copied and his description of the event to Doscher and Calvery. However, the record shows that
Doscher and Calvery were in pursuit of the thieves as they fled through the shopping mall and
Doscher and Calvery met the declarant as he entered the mall after observing the event he described. 
Considering these and other facts and circumstances we have already summarized, the trial court
could reasonably conclude that there was little opportunity for the declarant to make a calculated
misstatement of the event he witnessed, and that the declarant made the statement and furnished the
license plate number immediately after he witnessed the event. The trial court did not abuse its
discretion in admitting the declaration as a present sense impression exception to the hearsay rule. 
See Tex. R. Evid. 803(1).

 Second, appellant argues that the trial court should not have admitted Doscher's and
Calvery's testimony because they did not observe the event seen by the declarant. "Contemporaneity
of the event and the declaration, by itself, should be sufficient guarantee for admissibility. Rule
803(1) does not require that the witness have had an opportunity to observe and check what the
declarant describes." 2 Steven Goode et al., Texas Practice: Guide to the Texas Rules of Evidence: 
Civil and Criminal § 803.2 (2d ed. 1993 & Supp. 2001) (citing "Graham, Handbook of Federal
Evidence § 803.1 (3d ed. 1991); McCormick, Evidence § 271 (4th ed. 1992); Weinstein's Evidence
§ 803(1) [01])." See also Cathleen C. Herasimchuk, Texas Rules of Evidence Handbook, pp. 772-774 (3d ed., 1998 update); Texas Practice Series, 2 A Steven Goode et al.: Courtroom Handbook
on Texas Evidence, Rule 803(1) (2002 ed.) (Rule 803(1) does not require that witness who recounts 
hearsay utterance have had opportunity to observe and check what declarant describes.).

 There are cases in which present sense impression evidence has been held admissible
when the witness did not observe the event described by the declarant. See Brooks, 990 S.W.2d 278
at 286-87; Rabbani, 847 S.W.2d at 560 n.9. That Doscher and Calvery did not observe the event
related to them by the declarant did not render the complained of evidence inadmissible.

 Third, appellant argues that a statement made by an anonymous person cannot qualify
as a present sense impression exception to the hearsay rule. Appellant's argument is based on his
diligent search and failure to find any case upholding the admission of hearsay evidence under the
present sense impression exception when the declarant was anonymous.

 However, there appears to be at least one case upholding the admission of hearsay
evidence under the present sense impression exception when the declarants were unidentified. See
Green v. State, 876 S.W.2d 226 (Tex. App.--Beaumont 1994, no pet.). In Green, a police officer
testified, over objection, to a statement "attributed to two unnamed bystanders" that "the man in the
brown trench coat was shooting." Id. at 227. The reviewing court said:


 The record reflects that Officer Chatelain responded quickly to the gunshot occurring
only a block away. The two witnesses were running from the direction of the
gunshot. They were obviously describing an event that they had perceived almost
immediately before encountering Officer Chatelain. Sufficient reliability existed for
the statement to be admitted under the hearsay exception of Rule 803(1).



Id. at 228.

 Appellant also argues that because the declarant was unidentified, "there is no way
for the defense to question the motivation of the declarant in making such an observation about the
license plate number." Appellant urges that the inability to question the declarant deprived him of
his right to cross-examine and confront the declarant as guaranteed by the Sixth Amendment to the
United States Constitution. The exception for present sense impression is a firmly-rooted exception
to the hearsay rule recognized by Federal Rule of Evidence 803(1) and by Texas Rule of Evidence
803(1). Where proffered hearsay has sufficient guarantees of reliability to come within a firmly
rooted exception to the hearsay rule, the Confrontation Clause is satisfied. White v. Illinois, 502 US.
346, 356 (1992).

 The trial court did not abuse its discretion in admitting Doscher's and Calvery's
testimony as a present sense impression exception to the hearsay rule. Appellant's points of error
are overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Kidd, Puryear and Dally*

Affirmed

Filed: July 26, 2002

Do Not Publish






* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).